B. A. THORNTON, et. al., creditors, &c., plaintiff in error, vs. N. J. BUSSEY & WILLIAM WOOLDRIDGE, administrators, &c., defendants in error.

On the death of a member of two partnerships, both of which are insolvent and the estate of the deceased member is insolvent also, the creditors of each partnership must look to the effects of the partnership of which he is a creditor, for payment, and the separate creditors must look to the assets of the deceased partner for payment; in case of a surplus it is to be applied to the debts of the other class of creditors.

In Equity. Tried before Judge KIDDOO, Chattahoochee Superior Court, August Term, 1858.

A bill for injunction, and the marshalling of their intestate's assets, was filed by the defendants in error, as administrators of Thomas F. Wooldridge, deceased, against plaintiffs in error, as creditors of deceased, individually, and of the late mercantile firm of Wooldridge & Brannon, which said firm was composed of intestate and T. Brannon, and of the late firm of T. F. Wooldridge & Co., which was composed of intestate and one James; the estate of said intestate was insolvent, and both firms were insolvent; the assets of the firms were in the hands of the administrators of Wool-

dridge, as well as those of the individual estate of Wooldridge, the intestate.

On the trial of the case, the Court charged the jury that "the creditors of T. F. Wooldridge & Co. should share *pro rata* the assets of that firm, each in proportion to their demands ; that the creditors of the firm of Wooldridge & Brannon should share *pro rata* the assets of that firm; and the firm creditors, after deducting the *pro rata* share which each firm creditor had received from the respective firm assets, should then come in and share equally with the individual creditors of T. F. Wooldridge in all the individual assets ;" to which charge B. A. Thornton, one of the individual creditors, excepted and assigns the same as error.

THORNTON, for plaintiff in error.

NISBETS, *contra.*

*By the Court.*—McDONALD, J. delivering the opinion.

This is a bill by the administrators on the estate and effects of Thomas F. Wooldridge, deceased, asking directions of the Court as to the distribution thereof. The intestate was a member of two mercantile firms, both of which were insolvent; he had a considerable property in his individual right, disconnected from the partnership, but he was insolvent also ; the partnership creditors claimed to have appropriated to the payment of their debts, the assets of the firms respectively, of which they were the creditors, and for unpaid balances to share ratably with the individual creditors of the deceased, his own estate. The presiding Judge charged the jury in accordance with this position, and one of the individual creditors excepted.

This is the first time, I believe, that this question has been presented to this Court in a cause arising on the chancery side of its jurisdiction ; it has been before the law side of the Court twice, and the last was, by special agreement,

made a *quasi* equity cause.   I shall perhaps have occasion hereafter to refer to those cases.

The principle of the charge of the Court, to which exception is taken, is, that on the insolvency of a deceased partner, and two mercantile firms of which he was a member, the creditors of the firms respectively should divide among themselves, ratably, the assets, to the exclusion of the creditors of the individual deceased partners, and for unpaid balances they should share, ratably, with the individual creditors of such deceased partner.   The rights of joint and separate creditors of mercantile and other partnerships, and of the individual members of such partnerships, have been much discussed, and variously determined.   It has been held that the creditors of partnerships should come in, *pari passu*, with the individual creditors of an insolvent member of the partnership and share, ratably, his interest in the firm and his individual assets.   Again, it has been decided, that the partnership effects should be applied to the payment of joint creditors, and the separate creditors should be entitled to the surplus only, if any ; and if there should be a deficiency, that the partnership creditors for their unpaid balances, should share, *pro rata*, with the individual creditors, while in other cases it has been adjudged that joint creditors should look for payment, in the first instance, to the partnership assets, and that individual creditors should be entitled to pay from the individual assets, and that, for unpaid balances, each class of creditors should be entitled to any surplus of assets which may remain after the class of creditors primarily entitled to pay, had been satisfied. It is manifest that a Court of Chancery has no jurisdiction of any of these matters, unless the partnership, or the individual member of it, whose creditors are endeavoring to collect their debts, be insolvent.   If all are solvent, there can be no ground for the interference of a Court of Equity.   In that event every right is manageable in a Court of law ; that jurisdiction can afford an adequate remedy in every

case.  A partnership creditor has his option, after judgment, to proceed with his execution against the partnership effects, or the individual property of any partner.  If he proceeds against the former, there is an end of the case when he obtains satisfaction; if against the latter, the partner who is thus compelled *to* pay, has his ample remedy at law against the other partners for contribution.  If it be the case that an execution against an individual member of a firm be levied on the partnership effects, the purchaser gets the interest in the concern which that partner had, which is the profits after paying the partnership debts.

The case before us is, indisputably, within the jurisdiction of a Court of Equity, and being so, it must be disposed of according to the principles of that Court which are most approved by our judgment.  That the administrators of a deceased partner have brought the case before the Court for its direction in the administration of the assets of their intestate, does not change the rule by which the Court will be governed, in adjusting the rights of the parties, from that which would control it, if one or all of the creditors had been complainants; indeed, such bills are substantially the bills of the creditors, and the Court will so consider them.  It is said that partnership contracts are joint and several, and that no equity in favor of a separate creditor can effect the rights of the contract of the partnership creditor; that the joint creditors can have execution against the separate, as well as the joint property, or take in execution the body of each member of the partnership, and that equity follows the law in such cases.  There is some misapprehension in regard to what is meant when it is said that the contracts of partners are joint and several; such contracts are not joint and several at law; if they were, a separate action might be instituted at law against each partner, on the contract as his several contract; but that is not so.  The partners must all be sued, and if one be omitted, it would be a good ground for a plea in abatement.  That is the case in all joint con-

tracts, whether there be a partnership or not. The Act of 1820, *Cobb* 485, authorizes the plaintiff to proceed to judgment against joint contractors or partners who may have been sued, although there are others sued in the same action, who cannot be found, and the judgment, when obtained, will bind the joint or partnership property, and the individual property of the defendants, who were served, and the execution issued thereon, may be levied on such joint and several property. But if the member of a partnership die, his personal representative cannot be sued at law, the contract being joint, but creditors are bound to proceed against the survivors. In equity, however, creditors may proceed at once against the executors or administrators of the deceased partners, and hence, those legal writers are more accurate who say that *in Equity*, the contracts of partners are several as well as joint. But the contract of a surety is often joint; but because that is the case, he is not precluded from setting up an equitable defence which may arise in the transactions between the principal debtor and creditor, which releases him from his contract. Again, that the separate property may be taken in execution does not determine the character of the contract. It is often the case, that when contracts are joint there is no joint property, and the creditor must necessarily obtain satisfaction from the individual property of the joint contractors; that the joint creditor may proceed with his execution against the partnership property or the individual property of the partners, does not preclude the joint, or separate creditor of a partner from asserting an equity which entitles him to an exclusive satisfaction from the partnership or individual assets, accordingly as he may be a partnership or individual creditor.

Is there such an equity in favor of the different classes of creditors presented before us in this record? As already remarked, the parties all are insolvent, and neither the partnership creditors, nor the individual creditors of complainant's intestate, can be paid in full. The most just and

satisfactory rule in such a case, is that which was adopted in cases of bankruptcy in England, long anterior to the revolution, and which was the prevailing law at the time of our adopting statute, viz: that the partnership, or joint assets should be first applied to the payment of the partnership debts, and the surplus, if any, to the payment of the separate debts; and that the separate effects be applied first to the payment of the separate debts, and the surplus to payment of the partnership debts. *Ex parte Crowder*, 2d *Vernon*, 706; *Ex parte Cook*, 2 *Peere Wm's*, 500. This rule is commended by its equity and good sense. The justice of it was the cause of its adoption. The Court of chancery in England regulates these equities there, and controls the assignees in the distribution of the effects of bankrupts according to the equity of the case, when it does not come in conflict with any settled rule of law. Lord King, in a case before him, said, that the rule, as stated by us, was settled, and that it was a resolution of convenience. He did not say that it was so settled, because of its convenience; being a rule founded in the equitable rights of the parties in every such case, it was adopted; I have no doubt that the assignees might proceed to distribute the effects under it, without compelling creditors to resort to a Court of Chancery in every case, for special directions.

There is much equity in the rule, and as applicable to cases in which there has been no fraud, it is unexceptionable. It must be presumed, that every partnership debt increases the partnership effects to the same amount, and it is but just that they should be applied to their payment in preference to debts which contributed nothing to them, provided one or the other must go unpaid; and the same may be said in regard to the individual debts and effects of a partner.

Circumstances may exist in some cases which might call for a strict scrutiny into the conduct of the partners, to ascertain whether a part of what appears to be joint effects, are

not in fact the separate property of one of the partners, so as to give an equity to an individual partner, and *vice versa,* but that does not affect the rule; it only shows that there may be cases in which to give effect to the rule, there should be a strict investigation of the conduct and rights of the parties.

In .the case of *ex parte Hayden,* 1 *Brown* 454, joint creditors were allowed to prove on a separate commission, and to receive a dividend *pari passu* with separate creditors. There was no joint estate in that case, and the report is very short. The joint estate may have been divided out among the partners, and in that event, it would be one of the cases in which it would be proper to give effect to the rule, that the relative value of the joint estate, and the individual effects, as well as the amount of the joint and individual debts, should be ascertained. The case of *ex parte Cobham, Ib.* 576, was consented to.

The rule above laid down by us, prevails now in England, whether a joint debt be proved under a separate commission, or whether a separate debt be proved under a joint commission.

The case of Cleghorn vs. the Insurance Bank of Columbus, already referred to, was mainly decided on the ground that the parties were not in a Court of Equity, and the case being in a Court of law, the superior legal lien should prevail. The case in 19*th Geo. Rep.,* was decided on the ground that the above case was a precedent for it, although by agreement it was to be considered as though a bill in equity had been filed to adjust the rights of the parties. There is no question of lien in this case, but there can be no question, I apprehend, that if, in the two classes of creditors, some have liens, and others have not, the liens must have the precedence of debts having no lien, in the distribution of that portion of the effects from which the debt was to be paid; but a judgment against the partnership cannot, on the

ground of lien, be satisfied from the private assets, when that class of debts cannot share at all those assets with the separate creditors.

Judgment reversed.